## KEGNEY v. OVENS.

*(Supreme Court, General Term, Fifth Department. October 19, 1888.)*

HUSBAND AND WIFE—WIFE'S POWER TO CONTRACT.

A married woman, ordering some dresses for herself and children, was asked whose name should be put down at the head of the list, and gave her own. The person employed knew she was a married woman, living with her husband, and was not engaged in any separate business. The husband was in business, and had good credit, and had paid all the bills previously contracted by his wife. *Held*, that there was not sufficient evidence that the debt was contracted on the special promise of the wife to bind her, the reasonable inference being that it was on the credit of the husband.

Appeal from Erie county court.

Action by Mary Kegney against Anna M. Ovens. Verdict for plaintiff, and defendant appeals from judgment entered on the verdict, and from an order denying motion for new trial.

Argued before BARKER, P. J., HAIGHT, BRADLEY, and DWIGHT, JJ.

*Warren F. Miller*, for appellant. *Simon Fleischmann*, for respondent.

HAIGHT, J. This action was originally brought in justice court to recover pay for making dresses for the defendant and her children, and for the furnishing of the materials in connection therewith. The trial in that court resulted in a judgment for the plaintiff, and an appeal was taken therefrom to the county court, in which court a new trial was had, resulting in a verdict for the plaintiff.

The plaintiff is the assignee of the claims in question, and it appears that the defendant was a married woman, living with her husband, who was engaged in business, and that he paid all the bills contracted for his family up to the time of his failure; that, in November, 1880, he failed in business, and has since been insolvent. The evidence of Mrs. Wechter, the plaintiff's assignor, is that, "at the time I became acquainted with Mrs. Ovens, she came to see me about having some dresses made. She simply brought her goods, and wanted to know if I would make her dresses, and I told her, 'Yes.' And I asked her what name I would put down at the head of the list of the order, and she said, 'Mrs. Walter S. Ovens.' I put it down in that way." It further appeared that, from time to time, bills were sent to Mrs. Ovens, and were by her paid; that, on the 24th day of June, 1880, preceding the failure of Mr. Ovens, there was a balance due upon the account of $109.51; that, after the failure of Mr. Ovens, a bill was sent to the defendant, who stated that she could not pay the bill then, but that just as soon as she could get any money it would be the first of her bills that she would pay. Mrs. Wechter testified that "nothing was said when the goods were ordered about paying. This conversation about pay was all afterwards, when I presented the bill." And, again, that she knew she was a married woman, and what her husband's business was; that nothing was said about his credit; that she knew they were a family living together, and nothing was said about her having any estate of her own. The question presented is as to whether Mrs. Ovens is liable. No question is made but that she ordered the dresses; that they were for herself and children; and that there is a balance owing thereon.

The rule is that a married woman cannot bind herself by contract, unless —*First*, the obligation was created by her in or about carrying on her trade or business; or, *second*, the contract relates to, or is made for the benefit of, her separate estate; or, *third*, intention to charge the separate estate is ex-

pressed in the contract by which the liability is created; or, *fourth*, the debt was created for property purchased by her. *Bank* v. *Pruyn*, 90 N. Y. 250. In the case of *Tiemeyer* v. *Turnquist*, 85 N. Y. 516, it appears that the husband applied for credit in the purchase of supplies for the family, but was refused because he was irresponsible, and out of work. In the emergency the wife intervened, and bought upon her credit, promising explicitly, to induce the sale to her, that she would pay the debt out of the proceeds of a policy of insurance when it should mature, and be paid to her. By this means she obtained credit. The property was sold and delivered to her. It was held that she was liable upon her promise. In the case of *Smith* v. *Allen*, 1 Lans. 101–105, it was held that "goods purchased by the wife upon credit for family use are the goods of the husband; and the husband, and not the wife, is liable to pay for them, unless there is some special agreement between the parties by which they are sold to the wife upon her credit, and not upon the credit of the husband." In other words, the common-law rule that a married woman, living with her husband, is presumed to have authority from him to order such goods as are ordinarily required for family use, is not changed by the statute regulating the rights and liabilities of married women. If the party dealing with the wife knows she is a married woman, living with her husband, and the order is of a character to indicate that it is for the benefit of her husband's family, he is bound to presume that she is acting for her husband, and cannot hold her personally liable, unless she expressly agrees to become so. *Flynn* v. *Messenger*, 28 Minn. 208, 9 N. W. Rep. 759. The question is, therefore, did Mrs. Ovens agree to pay for these goods when they were ordered and delivered? Upon this point, as we have seen, nothing was said when the goods were ordered about pay, except she was asked what name should be put down at the head of the list of the order, and she said, "Mrs. Walter S. Ovens." We are of the opinion that this was not sufficient to sustain the finding of a special promise to pay on her part. She was not engaged in any business, and the only property that she appears to have had was a piano and some personal ornaments. Her husband, at that time, was engaged in business, having good credit, and paid all of the bills contracted for the family. The plaintiff's assignor, Wechter, knew that the defendant was married, living with her husband; that he was engaged in business; that she had no estate of her own, and was not engaged in any separate business. And the reasonable inference to be drawn from these circumstances is that the goods were delivered upon the faith and credit of the defendant's husband. In any event, the defendant is not liable, unless the goods were delivered to her upon her special promise to pay, which fact the evidence in this case fails to establish. The court, in its charge to the jury, at the request of the defendant's counsel, stated that it does not appear from the evidence that the defendant, at the time of the purchase of the goods, promised to pay for them; that the evidence is that, at the time of the purchase, nothing was said whatever about the pay; thus taking that question from the jury, and virtually holding that there was no express promise to pay, without which, under the rule, as we understand it, there can be no recovery. The defendant's motion for a nonsuit, or for a dismissal of the complaint, should have been granted. It follows that the judgment must be reversed, and a new trial ordered. So ordered.

BARKER, P. J., BRADLEY and DWIGHT, JJ., concurred.